UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 08-00561-TLM |
| PATRICK and MARCIE GANIER, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| JEREMY GUGINO, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 09-06026-TLM |
| ) | |
| ALLIANCE TITLE AND ESCROW ) | |
| CORPORATION, a Delaware ) | |
| corporation, JENNIFER KASSIS, ) | |
| JOSEPH RAMSEY, MANDY ) | |
| RAMSEY, JMR CONTRACTING ) | |
| LLC, an Idaho limited liability ) | |
| company, and TROY EDWARDS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

**I.    INTRODUCTION**

This is an adversary proceeding commenced by the chapter 7 trustee

("Trustee") against Alliance Title and Escrow Corporation ("Alliance"), Jennifer

MEMORANDUM OF DECISION - 1

Kassis, and four other defendants. Before the Court is Alliance's Motion for Partial Summary Judgment. Doc. No. 31. Alliance requests that summary judgment be entered on Trustee's *respondeat superior* claim for two reasons: (1) the claim is barred by the statute of limitations and (2) Trustee has not produced evidence sufficient to show a genuine issue of material fact on the elements of Idaho Code § 51-118(2). Jennifer Kassis joins in Alliance's motion as to the statute of limitations defense. Doc. No. 39.[1]

After an April 21, 2010 hearing at which oral argument was presented, the Court took the matter under advisement. Having considered the record, the arguments, and the applicable authorities, the Court will grant Alliance's motion and deny Kassis' motion.

## II. FACTS

On February 22, 2006, Kassis, an Alliance employee, notarized the forged signature of Patrick Ganier ("Debtor") on a deed of trust in favor of Troy Edwards ("Edwards") on property referred to by the parties as the "Washington Heights Property." The deed of trust purportedly secured a $50,000.00 promissory note in

---

[1] While Kassis purports to join in the statute of limitations portion of Alliance's motion for summary judgment, the only claim asserted against Alliance, and thus the sole claim contemplated by Alliance's motion, is Trustee's *respondeat superior* claim under Idaho Code § 51-118(2). *See* Doc. No. 1. Presumably, Kassis' joinder was intended to incorporate and assert Alliance's statute of limitations argument with respect to Trustee's claim against her under Idaho Code § 51-118(1), and the Court treats it as such.

MEMORANDUM OF DECISION - 2

favor of Edwards.[2] The deed was recorded in Canyon County that same day.

On May 31, 2006, Debtor and his wife Marcie Ganier (collectively "Debtors") sold the Washington Heights Property. Debtors discovered the deed of trust when Stewart Title, the company who handled the closing, paid Edwards $57,500.00, the amount then due on the promissory note, in order to obtain release of the deed of trust encumbering the property.

On March 28, 2008, Debtors filed a voluntary petition for chapter 7 relief, and on March 25, 2009, Trustee filed this adversary proceeding asserting claims against Kassis and Alliance for official misconduct under § 51-118 of the Idaho Notary Public Act, Idaho Code §§ 51-101 to -123.

## III. SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[3] A dispute is genuine if there is sufficient evidence for a reasonable trier of fact to hold in favor of the nonmoving party, and a fact is

---

[2] Although the deed of trust claimed to secure a $50,000.00 promissory note, the obligation on the note was actually $55,000.00. That amount was later amended to $57,500.00. While the note was allegedly executed by Debtor and his business partner, Joseph Ramsey, Trustee disputes whether Debtor in fact signed the note.

[3] Rule 7056 of the Federal Rules of Bankruptcy Procedures incorporates and makes applicable Federal Rule of Civil Procedure 56 in this adversary proceeding.

MEMORANDUM OF DECISION - 3

material if it might impact the outcome of the case. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000). The Court does not weigh evidence in resolving a motion for summary judgment, but rather determines only whether a material factual dispute remains for trial. *Jones v. State Farm Mut. Auto Ins. Co. (In re Jones)*, 401 B.R. 456, 460 (Bankr. D. Idaho 2009).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Where the nonmoving party bears the burden of proof at trial, the moving party need not introduce any affirmative evidence but may simply point out the absence of evidence to support an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This then shifts the burden to the nonmoving party to produce evidence sufficient to support a trial judgment in his favor. *Id.* at 324. In doing so, the nonmoving party must go beyond the pleadings and show by affidavits or by the discovery and disclosure materials on file that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2).

On a motion for summary judgment, the evidence must always be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

MEMORANDUM OF DECISION - 4

## IV. DISCUSSION AND DISPOSITION

### A. Statute of Limitations

The Court first addresses the assertion of Alliance and Kassis (collectively "Alliance") that Trustee's claims under Idaho Code § 51-118 are barred by the applicable statute of limitations.

For purposes of the statute of limitations argument, the pertinent facts are undisputed:

- On February 22, 2006, Kassis, an Alliance employee, notarized Debtor's forged signature on a deed of trust in favor of Edwards on Debtors' property.

- On February 22, 2006, the deed of trust was recorded in Canyon County.

- On May 31, 2006, Debtors sold the property and discovered the deed of trust when Stewart Title paid Edwards $57,500.00 to free the property of the deed.

- On March 28, 2008, Debtors filed a voluntary petition for chapter 7 relief.

- On March 25, 2009, Trustee initiated this adversary proceeding against Alliance, among others.

Because no genuine issues of material fact exist with respect to the statute

MEMORANDUM OF DECISION - 5

of limitations issue, the determinative question is whether Alliance is entitled to judgment as a matter of law. The Court finds that they are not.

The statute of limitations applicable to claims under Idaho Code § 51-118 is found in Idaho Code § 5-219(4), which requires commencement of a professional malpractice cause of action within 2 years after the cause of action accrued.[4] Under § 5-219(4), "[a]n action to recover damages for professional malpractice . . . shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom . . . ." An action is deemed to have accrued for purposes of Idaho Code § 5-219(4) when there is objective proof that would support the existence of "some actual damage." *Chicoine v. Bignall*, 835 P.2d 1293, 1298 (Idaho 1992); *Bonz v. Sudweeks*, 808 P.2d 876, 878 (Idaho 1991). "The determination of what constitutes 'damage' for purposes of accrual of an action must be decided on the circumstances presented in each individual case." *Bonz*, 808 P.2d at 880.

The parties disagree as to when Trustee's cause of action under Idaho Code § 51-118 accrued. More specifically, they disagree as to when Debtors suffered "some actual damage" from Kassis' alleged misconduct. Alliance argues that Debtors suffered some damage, and the cause of action thus accrued, when the

---

[4] The parties so agreed, and argued no other statute of limitations.

MEMORANDUM OF DECISION - 6

deed of trust was recorded on February 22, 2006, and that the two-year limitations period had run by the time Debtors filed bankruptcy on March 28, 2008. Trustee maintains that Debtors suffered no damage, and the cause of action did not accrue, until the property was sold and $57,500.00 was paid from the sale proceeds on May 31, 2006, to release the purported lien, and that, consequently, the limitations period had not run when Debtors filed their petition.[5] The Court agrees with Trustee and concludes that Debtors did not suffer damage until May 31, 2006.

Cases analyzing the accrual of actions under Idaho Code § 5-219(4) are legion. Of those, one proves particularly instructive here.

In *Bonz v. Sudweeks*, 835 P.2d 1293 (Idaho 1991), the defendant attorneys represented the plaintiffs in various real property transactions. Some of the

---

[5] Trustee further contends that, pursuant to 11 U.S.C. § 108, the limitations period was extended another two years from the March 28, 2008 petition date, giving Trustee until March 28, 2010 to file his claim. Section 108(a) provides:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order of relief.

While Alliance disputes the accrual date for purposes of the statute of limitations, it has not disagreed with Trustee's interpretation of § 108 should the statute of limitations date not have expired prepetition.

MEMORANDUM OF DECISION - 7

transactions resulted in litigation and the filing and recording of a *lis pendens* on plaintiffs' real property. After successfully settling the litigation, the defendants prepared and recorded a release of *lis pendens* on March 13, 1986. Unfortunately, the release was recorded in the wrong county. As a result, the original *lis pendens* was not released and continued to be a cloud on the title to plaintiffs' property. It was later discovered in March, 1987, by a third party investor who had offered to invest in the development of plaintiffs' property but withdrew his offer upon encountering the cloud on title to the property. However, the investor did not advise the plaintiffs of the presence of the *lis pendens*. *Id.* at 877.

The plaintiffs later discovered that the defendants had recorded the release of *lis pendens* in the wrong county. They filed a professional malpractice action against the defendants on January 6, 1989, more than two years after the release of *lis pendens* had been improperly recorded, and the defendants moved for summary judgment on the basis that the action was barred by the statute of limitations in Idaho Code § 5-219(4). The trial court granted the defendants' motion on the ground that the two-year statute of limitations had expired before the complaint was filed because the plaintiffs had been damaged at the time of the recording of the release. *Id.*

In reversing the trial court, the Idaho Supreme Court described the issue before it as "whether the presence of the *lis pendens* as a cloud on the title in and

MEMORANDUM OF DECISION - 8

of itself, without some related or actual damage to plaintiffs, is sufficient to cause the action to accrue." *Id.* at 879. The court concluded the *lis pendens* as a cloud on title was not sufficient, and on that basis found the plaintiffs' cause of action accrued at the time the third party investor learned of the *lis pendens* and withdrew his offer to participate in developing the property, rather than at the earlier point in time when the release was filed in the wrong county. *Id.* at 879–80.

The facts presented here closely resemble those of *Bonz*. Just as the filing of the release of *lis pendens* in the wrong county in *Bonz* resulted in a continuing cloud on title in that case, the recording of the deed of trust in this case resulted in a cloud on the title to the Washington Heights Property. As explained by the *Bonz* court, the cloud on title "in and of itself" is not sufficient to cause the action to accrue, "without some related or actual damage" to Debtors. In *Bonz*, the damage that caused the plaintiffs' action to accrue was the investor's withdrawal of his financial support after learning of the cloud on title to the plaintiffs' property. Here, Debtors did not suffer "some actual damage" until Edwards was paid the $57,500.00 at closing in order to release the deed of trust containing the notarized forged signature. Thus, the cause of action did not accrue until that payment was made on May 31, 2006.

Alliance seeks to avoid the result dictated by *Bonz* by arguing that Debtors could have pursued a cause of action for slander of title at the time the deed of

MEMORANDUM OF DECISION - 9

trust was recorded on February 22, 2006, and that therefore some damage occurred at that time. The Court is unpersuaded.

"Slander of title requires proof of four elements: (1) publication of a slanderous statement; (2) its falsity; (3) malice; and (4) resulting special damages." *Porter v. Bassett*, 195 P.3d 1212, 1218 (Idaho 2008). Attorney's fees and legal expenses *incurred* in removing the cloud on a plaintiff's title qualify as special damages for purposes of a slander of title claim. *Rayl v. Shull Enters., Inc.*, 700 P.2d 567, 573 (Idaho 1984).

Although Debtors arguably could have pursued a slander of title action to remove the deed of trust on their property, they did not do so. Indeed, Debtors took no steps to remove the deed of trust before the May 31, 2006 closing as they had no knowledge of the deed before that date. Thus, they did not sustain any special damages, in the form of attorney's fees, legal expenses or otherwise, before May 31, 2006. That they could have pursued a slander of title action only resulted in the potential for damage and such potential for damage is insufficient to cause an action to accrue for purposes of Idaho Code § 5-219(4). *See Parsons Packing, Inc. v. Masingill*, 95 P.3d 631, 634 (Idaho 2004).

In short, Debtors did not suffer "some actual damage" from Kassis' alleged misconduct until the May 31, 2006 closing. Consequently, Trustee's claim under Idaho Code § 51-118 did not accrue and the limitations period did not begin to run

MEMORANDUM OF DECISION - 10

until May 31, 2006. Pursuant to § 108 of the Bankruptcy Code, Debtors' March 28, 2008 bankruptcy filing extended the limitation period to March 28, 2010, two years from the petition date. Thus, the filing of Trustee's complaint on March 25, 2009, was timely.

### B. Idaho Code § 51-118(2)

Alliance also argues that the evidence is insufficient to establish genuine issues of material fact on the elements of Trustee's *respondeat superior* claim under Idaho Code § 51-118(2). The Court agrees.

Idaho Code § 51-118 provides:

> (1) A notary public shall be liable for all damages proximately caused by his official misconduct.
> (2) The employer of a notary public shall be jointly and severally liable with such notary public for all damages proximately caused by the official misconduct of such notary public if:
>> (a) The notary public was acting within the scope of his employment; and
>> (b) The employer had actual knowledge of, or reasonably should have known of, the notary public's official misconduct.

At trial, Trustee will bear the burden of proof on each of these elements.[6] Thus, to survive summary judgment Trustee must produce evidence that could support a judgment in his favor at trial on each of those elements. *See Celotex*, 477 U.S. at 322–23.

Alliance contends that Trustee has failed to show genuine issues as to

---

[6] Idaho Code § 51-118(2)(a) and (b) are joined with an "and," making the test conjunctive. Trustee must therefore show a genuine issue of fact as to both statutory elements.

MEMORANDUM OF DECISION - 11

whether Kassis was acting within the scope of her employment under § 51-118(2)(a), and as to whether Alliance had actual knowledge of, or reasonably should have known of, Kassis' official misconduct under § 51-118(2)(b).[7] The Court finds Trustee has established a genuine issue as to the former, but not as to the later.

### 1. Scope of employment

Idaho courts have provided guidance for evaluating whether an employee's act is within the scope of her employment:

> [I]f the employee's purpose is purely personal, it does not matter that the employee is using the employer's tools or driving the employer's vehicle or some other activity that merely resembles his or her employment. The employee must be engaged in some type of work that is assigned to him or her in the general sense of doing something to serve the employer.

*Richard J. And Esther E. Wooley Trust v. DeBest Plumbing Inc.*, 983 P.2d 834,

---

[7] Trustee alleges that Kassis engaged in "official misconduct" as defined by Idaho Code § 51-112(b) when she failed to exercise the required degree of care in identifying Debtor's signature on the deed of trust. That section provides:

> Official misconduct is the wrongful exercise of a power or the wrongful performance of a duty. In this context, wrongful shall mean unauthorized, unlawful, abusive, negligent, or reckless. Official misconduct by a notary public shall include, but not be limited to:
>
> . . .
>
> (b) Failure to exercise the required degree of care in identifying a person whose identity is an essential element of a notarial act . . . .

For purposes of this motion, Alliance does not contend that there is no genuine issue of fact as to whether Kassis engaged in "official misconduct" under Idaho Code § 51-112; therefore, the Court assumes that such an issue exists.

MEMORANDUM OF DECISION - 12

838 (1999).

> The scope of one's employment encompasses those acts which are so closely connected with what the servant is supposed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.
>
> In general the servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space and is actuated, at least in part, by a purpose to serve the master. An employee's purpose or intent, however misguided in its means, must be to further the employer's business interests. If the employee acts from purely personal motives in no way connected with the employer's interest then the master is not liable.

*Podolan v. Idaho Legal Aid Servs., Inc.*, 854 P.2d 280, 287–88 (Idaho Ct. App. 1993) (quoting *Birkner v. Salt Lake County*, 7771 P.2d 1053, 1056–57 (Utah 1989) (citations omitted)).

There are disputed facts surrounding the scope of Kassis' employment with Alliance and whether notarization of the deed of trust fell within that scope.

Alliance asserts that Kassis was not acting within the scope of her employment when she notarized the deed of trust. It relies primarily on the affidavit of Suzie Colbry, a senior vice president at Alliance, to support its contention. In her affidavit, Doc. No. 32-2, Colbry avers that no title or escrow file was created in connection with the deed of trust, and that no income or benefit was received by Alliance for Kassis' notarization of the deed of trust. Colbry further testifies that while Alliance has several employees trained as notaries

MEMORANDUM OF DECISION - 13

public, it provides notarial services only in the context of closing real property transactions.

Trustee counters with portions of deposition testimony from Kassis and Kathy Brashear, Doc. Nos. 38-3 and 38-2, respectively. That deposition testimony indicates that Kassis developed relationships with Debtors and their business partners, Joe and Mandy Ramsey, during her time as an escrow officer at Alliance. It further indicates that when she moved to another department within Alliance, Kassis continued her existing client relationships with Debtors and the Ramseys in order to prevent them from taking their business to another title company. This included Kassis handling closings and other matters for Debtors not related to her new department. Doc. No. 38-3 at 5–7; Doc. No. 38-2 at 5.

Based on this competing testimony, a reasonable trier of fact could find that Kassis' notarization of the deed of trust was within the scope of her employment given her stated purpose was to continue a business relationship Alliance had encouraged her to maintain, and from which Alliance sought to benefit. Therefore, a genuine issue exists as to this element of Trustee's claim.

### 2. Actual knowledge of, or reasonably should have known of, official misconduct

Despite showing a fact issue on Idaho Code § 51-118(2)(a), Trustee has produced no evidence to show that Alliance had actual knowledge of, or reasonably should have known of, Kassis' alleged misconduct. *See* Idaho Code

MEMORANDUM OF DECISION - 14

§ 51-118(2)(b).

Trustee concedes that there is no evidence of actual knowledge. As evidence that Alliance reasonably should have known of Kassis' alleged misconduct, Trustee relies solely on Colbry's deposition testimony, Doc. No. 38-1. Colbry states that Alliance commonly paid to renew its escrow officers' notary certificates and provided the required notary bonds for those officers. *Id.* at 6. She further states that, as part of her employment with Alliance, Kassis participated in training that explained procedures for notarizing documents. *Id.* at 7. Trustee argues that, based on this evidence, a trier of fact could find that Alliance should have reasonably known of Kassis' alleged official misconduct.

This evidence does not address whether Alliance reasonably should have known of Kassis' *mis*conduct. At most, it shows that notarizing documents was within the scope of Kassis' employment, *see* Idaho Code § 51-118(2)(a), or that Alliance reasonably should have known that Kassis was notarizing documents while employed by Alliance. But the statute requires proof of facts that the employer reasonably should have known of the notary public's *official misconduct*. *See* Idaho Code § 51-118(2)(b). Something must be shown to suggest the employer was put on notice that the employee/notary may be misbehaving or not properly acting. Trustee has made no such showing.

In sum, Trustee has produced no evidence to show that Alliance should

MEMORANDUM OF DECISION - 15

have reasonably known of Kassis' alleged misconduct. Therefore, Trustee has failed to show there is a genuine issue of material fact on an essential element of his claim. Summary judgment will be entered in favor of Alliance on Trustee's *respondeat superior* claim under Idaho Code § 51-118(2).

## V. CONCLUSION

Based on the reasons stated above, Alliance's motion will be granted and summary judgment will be entered in its favor on Trustee's claim under Idaho Code § 51-118(2). Kassis' motion, based on Alliance's statute of limitations argument, will be denied.

The Court will enter an order and form of judgment.

DATED: May 3, 2010

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE